I am informed that all parties who are supposed to be here are already here, so I will not call the calendar. The first case is Moussa Diarra v. City of New York. Thank you. Good morning, counsel.  May it please the court. My name is Kissinger Sivanda, and I represent Mr. Moussa Diarra in this matter. Members of the bench, this case is a simple one. It's a very straightforward case. We are arguing that the summary judgment be reversed and remanded to a different judge because of misapplication of what the law for summary judgment states, as well as because of favoritism. We submitted over 20 exhibits to rebut the summary judgment, and the summary judgment standard was not applied. Miller v. Wolpoff v. Abrahamson states- You're talking a little bit too close to the mic. Back off just a couple of inches. Okay. Your Honor, Miller v. Wolpoff states that if there's a genuine dispute to material fact, only you give a summary judgment only if there is no genuine dispute to material fact, and the movement is entitled to judgment as a matter of law. As the case comes to us, it is an allegation that there's a municipal policy that was violated in the handling of Mr. Diarra's claim. An unconstitutional municipal policy. An unconstitutional- An unconstitutional municipal policy. Can you describe what that policy was? Yes, Justice Pula. The policy pretty much was to arrest him with no probable cause. The policy is- That's the policy you allege, arrest without probable cause? Yes, Your Honor, is to arrest with no probable cause, and it was- What does that have to do with this case? Are you saying there was no probable cause in this case? Yes, we're saying that. All right, why was there no probable cause? Because there was egregious behavior, Justice Leval. Blake v. City of New York states that- By the defendant? Pardon? Egregious behavior by the defendant who was- No, by the police officer. The egregious behavior involved- I'm sorry, I was asking you why was there no probable cause? Yes, I was explaining that. There was egregious behavior by the arresting police officer. I don't understand you. He faked- My question is why was there no probable cause? Not was it- Egregious behavior is a different point. Okay. Egregious behavior, we can talk about that, but my question is why was there no probable cause? I cannot answer to why there was no probable cause because he faked, he wrote a fictitious arresting affidavit. He submitted that arresting affidavit to a judge, a state judge, and he got the appearance of probable cause. He never visited the crime scene, he never interviewed any witnesses, there was no rape kit, there was nothing. He was just merely standing in the princet, and then he arrested him. Didn't he speak to the complaining witness? No, he did not. He did not speak to her. The woman had made a complaint that her husband had cut her clitoris. No, that's not true. That's not true. And there was hospital confirmation of such an injury to her. That's not true, your honor. Tell me why it's not true. It's not true. A57 is the police report. The police report, if you go back, you go to your chambers and let your law clerks look at it closely. A57, he states specifically, the victim is at the hospital. She only speaks French. They were looking for somebody who could speak French. He never spoke to her. She was at the hospital on September 22. Mr. Dier walks into the princet, September 22, 7 PM. I'm looking for my wife. He gets arrested around 8 PM. The woman is looked at Harlem Hospital between 12 noon and she's released at quarter after nine. Mrs. Kowalski, the arresting police officer, he never, ever talked with the complainant. Because one, he doesn't speak French. Two, the woman was in the hospital. Particular officer, are you saying that the woman never said that her husband cut her vagina? Yes, that's what I'm saying. That's what I'm saying. And I'm also saying that, Justice Leval, in the medical report, A130, there is nothing whatsoever of a vaginal clitoris cutting. There's nothing whatsoever to support that arresting affidavit. More so, he himself in the, I'm sorry, Justice. He himself in the deposition, 86, when I asked him, why did you do this arrest? He said it was policy. He said it himself. When we say there is an absence here, there's a vacuum, there's no probable cause. You never went to the crime scene. No rape kits. You only took the pictures five months after the incident. Those pictures are so exculpatory, they're never even used. I thought the medical report said that she was bleeding in her labora minor. No, he never said anything of that nature. The medical report did not support him writing that he wrote in his arresting affidavit that he circumcised, excised, and infibulated the hole in any part of the labia majora and labia minor and clitoris of another person who had not reached 18 years of age. Interesting point, too, she was 24 and he says she's 18. He lies on the arresting affidavit. This language is nowhere to be found in the medical report. So the medical report, my version, says that there were 0.5 millimeter lacerations to the right labia minora, which appear to be healing well. So that means there was something that had happened there, and it was healing by the time she got to the hospital, correct? No, that's not correct. They were found even when he had a jury trial. I just read from the report. Isn't that the language from the report? It's the language, it's not the circumcised language. Yes, it's the language they found. But you disagree with what the report says, but you don't deny that that's what the report says. No, I disagree that the report would warrant a police officer to write circumcised, excised, infubulated, announce it to the New York Times, sorry, the New York Daily News carried an article, African circumcises his wife. I am saying, Your Honor, that it doesn't warrant a person being arrested for circumcising his wife if you have a 0.5 millimeter laceration, which was part of the case, that it could be achieved through a regular care. It wasn't a way and tale of a woman. It wasn't attributable to Mr. Diarra. You've reserved three minutes for rebuttal. Two minutes for rebuttal. Yes, I have. Would you like to use them now, or would you like to- I'll use them for rebuttal, because I want to talk about favoritism, and I'll talk about the state notice of claims not defeating a state claim that involves the fundamental right to liberty, involving liberty. All right, we'll hear from the city of New York. Good morning, your honors. May it please the court, my name is Jamison Davies for the city of New York. The district court's decision granting summary judgment in favor of the city should be affirmed. Mr. Diarra did not show that his arrest was pursuant to an unconstitutional- What was the probable cause? I'm sorry? Tell us the probable cause. The probable cause was provided by the statement of the complaining witness. She entered the hospital, she made a statement to a case worker, who then called the police, the hospital police initially, then the hospital police called the precinct, and she repeated that statement. What did she say to the case worker? She said that her husband had assaulted her as a result of her refusing to have sex with him. He had raped her, and that he had tried to cut her vagina with a razor blade. Tried to cut her? He had cut her, I'm sorry, I apologize. And that is corroborated also, even though a complaining witness' statement is by itself sufficient to support probable cause under this court's precedence, like Stanbury v. Wertman. It was also corroborated by the medical evidence. As judge- When was the statement given? What time? I'm not sure the exact time, but it was given on the 22nd, I believe, in the evening. The part of the record that counsel pointed to was actually not the police report. It's the report of, that they had received the call and were going to the hospital. It's not the report of the actual crime. So it was before they had taken the statement of the witness, where he said that he had not interviewed. The case worker communicated to the police that the woman had said to the case worker that her husband had raped her and had cut her vagina with a razor? Yes, and then the case worker initially called the hospital police. The hospital police then called the precinct, the local precinct. And that's on page 95 of the record and 135 of the record. It shows the sequence of events. And how long after the precinct received the report was this man arrested? I believe it was two days later, because they initially did not find him. I believe the report was on the 22nd, and the arrest warrant, the arrest complaint is dated the 24th of September. So Mr. Girard is unable to make the threshold showing at the outset that his arrest was not supported by probable cause. Even the statement of the witness alone would be sufficient to support probable cause to arrest. But he clearly can't make the additional showing that the arrest was pursuant to an unconstitutional policy or practice by the city of New York. There's no evidence of any unconstitutional policy in the record. The only evidence in the record is that they followed the perfectly constitutional policy of arresting criminal suspects based on probable cause. That's what Detective Scorsese testified to, and there is nothing in the record that contradicts that. Turning to the- The answer of the police officer in his deposition made mention of a policy that he had arrested the person pursuant to a city policy. What was that answer? What did he say in that answer? Sure, he said, this is on 88 of the record, if you have a complainant witness and medical evidence showing in this case an assault, there's probable cause to make an arrest. And he gave that answer in response to a question, what policy were you referring to when you said the arrest was made pursuant to a policy? So he is saying that the arrest was made pursuant to the policy that you arrest somebody if there's probable cause to make an arrest. In this case there was, there was a complaining witness and corroborating medical evidence. And that policy is perfectly constitutional. And there's no evidence of any other policy in the record. Turning to the state law claims just briefly, the case law is very clear. Felder v Casey says that if you have a state law claim, you're required to comply with state notice of claim provisions in federal court. The only exception is 1983 claims. State notice of claim provisions don't override 1983, but they do apply to state law claims, and that's just black letter law. The notice was never filed on the state law claims. The only thing we can say for certain is there was never an allegation that the notice was filed. The plaintiff is required to show, to allege compliance with the notice of claim provision. But there's nothing to indicate that there was any notice of claim filed. I have a little bit of a problem with the state law claim, in that the justification given for the dismissal of the state law claims was the failure to plead the giving of 90 days notice. Is that correct? That's correct. But the failure to plead something ordinarily justifies, to plead an essential element, justifies a dismissal under 12B6 for failure to state a claim. It doesn't justify summary judgment. I believe that's correct, but it ends up not having much of a practical effect because the claim is foreclosed regardless of the standard. And even if he had failed to plead it, I suppose you could say that he could have induced evidence to support it. He hasn't argued to us that there is evidence to support it, so I suppose we shouldn't concern ourselves with it. Right, and I don't think there, even if he went back and permitted him to amend his complaint, I don't think there would be any evidence to support it because I'm reasonably certain that there was no claim filed. But at any event, there was plenty of time to adduce that evidence before summary judgment, and he did not do so. And his claims are foreclosed under black letter law. Turning to the last point, the motion, well there was actually never a motion, but the request for Judge Broderick to recuse himself. There's just no merit to that. There's no evidence of anything in the record that would suggest to an objective observer, which is the standard, that Judge Broderick was not acting impartially. There's mostly the arguments or complaints about his rulings, which are the subject of the appeal, not the subject of a recusal motion. He doesn't allege that there was any differential treatment in terms of giving extensions to the city that weren't given to Mr. HDR or anything like that, and some minor stray comments that might be construed as disagreeing with one size legal arguments under light key are just not sufficient. A judge is allowed to even go further than that. I think the Supreme Court said that even a stern judge is not necessarily impartial. Unless there are any further questions on anything else, we're happy to rest on our briefs for the remainder of the arguments. Thank you. Mr. Sabandi, you've reserved two minutes for rebuttal. Justice Pooler, it's really disturbing City of New York's approach to giving truthful facts. If you look at the deposition A86, I asked him, why did you arrest? He said, mostly NYPD policy. This time, it was a domestic arrest, meaning they have an intimate relationship. There's a victim, there were the hospital records. At the time of arrest, 22 September, he had not seen any record. The medical record is dated September 24th. He had not seen any record when he executed the arrest. They then took him out in- I thought he was arrested on the 24th. No, it was on the 22nd, the affidavit says 24th, it's dated 24th. But he was arrested on the day he went to the prison. In the deposition room, they took him out four to five minutes, and then they brought him back into the deposition room, sorry. You don't need a medical record for probable cause. If a complainant says, somebody assaulted me, somebody raped me, somebody cut me with a razor, that establishes probable cause in almost all circumstances. It doesn't need to be corroborated by a medical record to be probable cause. Your Honor, respectfully, we disagree. Our- I'm sorry, show me your- Yes, Eleanor versus Gates, totality of circumstances. We are arguing that we are not talking about a very minor report. Vaginal cutting of a vagina, removing, cutting clitoris and all those, it would require, at the minimum, for him to actually go to the crime scene. He never even did that. He just wrote something, and we are not sure what he claims he heard. He heard. But you asked him all that in his deposition, didn't you? I asked him, what was your probable cause? He said he never went anywhere. I asked him, did you pick up any evidence? He said he didn't do anything. He said he just stood there between 7 and then he arrested him at 8 PM. If you look at the police arrest video, he is trying to coerce a confession from Mr. Diara. If you have probable cause, why are you trying to get a confession from him? Do you want me to conclude, members? Another issue of favoritism, the district judge allowed an attorney to appear in front of him without actually filing a notice of claim. So the issue is that it's not just our version of fact, it's what he actually did. You are supposed to file a notice of appearance before you appear in front of a judge. We raise that to him, he said that's fine, she works for City of New York. There are many different instances which add up to he was biased towards us. In terms of state notice of claim, we are saying the state claim, the one that involves the state with fundamental liberty, the forced imprisonment, it cannot be defeated unless it passes substantive procedural due process, Brown v. Board of Education. That law they have that says 90 days, you cannot sue the city for false imprisonment. Take away your fundamental right to liberty. It has to pass substantive procedural due process. They have not shown why in 90 days, there's a compelling reason why the City of New York should not be, should not be, excuse me, should not be sued for false imprisonment. Let's see, yes, Your Honor. Thank you, I have no further questions. Your time has expired. Thank you. Thank you very much. Thank you, thank you, Your Honors, thank you.